UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SCALLOP SHELL NURSING & REHABILITATION, Plaintiff, | : | |
| v. | : | C.A. No. 13-471ML |
| LEWIS H. GAFFETT, Defendant, | : | |
| v. | : | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Third-Party Defendant. | : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

Plaintiff Scallop Shell Nursing and Rehabilitation ("Nursing Home") initiated this action in the Rhode Island Fourth Division District Court on October 15, 2012, seeking $6,190 for medical services rendered to the deceased wife of Defendant and Third-Party Plaintiff Lewis H. Gaffett at the Nursing Home. Mr. Gaffett responded with an "Answer, Counterclaim, and Crossclaim." His crossclaim against Third-Party Defendant, the United States Department of Health and Human Services ("HHS") alleges that "if the reason the plaintiff has not been paid in full or in part are because of the denial of Medicare payment for nursing care . . . then [HHS] has acted unlawfully." On June 24, 2013, HHS removed this action from the state court to this Court based on 28 U.S.C. § 1442(a)(1), which permits removal of civil actions against any agency of the United States. The Nursing Home and Mr. Gaffett settled their claims against each other on August 1, 2013. HHS now is moving to dismiss the crossclaim, arguing that this Court lacks

jurisdiction over it pursuant to Fed. R. Civ. P. 12(b)(1) and that the crossclaim fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

This motion (ECF No. 5), which has been referred to me for report and recommendation, should be granted in part. Specifically, I recommend that the Fed. R. Civ. P. 12(b)(1) motion based on the lack of federal subject matter jurisdiction be granted. Because this Court lacks jurisdiction to entertain this matter, I do not decide whether the crossclaim fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). To the extent that the motion is based on Fed. R. Civ. P. 12(b)(6), I recommend that it be denied in part as moot.

## I. BACKGROUND FACTS[1]

Sandra Gaffett, Mr. Gaffett's deceased wife, was hospitalized and discharged to the Nursing Home. Counterclaim ¶¶ 10-11. From February 21, 2011 through April 8, 2011, three bills for her care were submitted to Medicare by the Nursing Home, seeking a total of $31,957.42. Colby Decl. ¶ 4. Medicare reimbursed $24,244.01 and a total of $3,820.50 was designated as Mrs. Gaffett's "co-insurance amount," to be paid by her secondary insurance, Blue Cross Blue Shield of Rhode Island, depending on its guidelines and regulations. Colby Decl. ¶¶ 4, 7. Medicare did not receive a redetermination request with respect to any of these three bills from either the Nursing Home or from Mr. or Mrs. Gaffett. Under the Medicare regulations, either the provider or the patient may make such a request; a redetermination request is due from the provider within one-hundred twenty days of the date of the remittance to the Nursing Home and from the patient within one-hundred twenty days of the date of the Medicare Summary Notice sent to Mrs. Gaffett. Colby Decl. ¶ 6.

[1] These facts are derived from the filings of the parties and from the Declaration of Sandra Colby, which was filed by HHS in support of its motion to dismiss.

For medical services supplied to Mrs. Gaffett that are unspecified in the record, the Nursing Home sued Mr. Gaffett on October 15, 2012, seeking $6,190 in Rhode Island Fourth Division District Court. Complaint ¶¶ 3, 5. Mr. Gaffett responded with an affirmative defense alleging that the Nursing Home had failed to pursue this claim "against the Social Security Administration or the medical insurance carriers" and cannot recover from him. He also counterclaimed alleging that the Nursing Home had told him that it had "appealed" a request to Medicare for payment so that either the matter should be stayed while the appeal proceeded or, if an appeal had not been taken, the Nursing Home is barred from recovery from the patient. Counterclaim ¶¶ 13, 15-16. The counterclaim mentions obliquely "a settlement in federal court of a nationwide class action against [HHS]." Mr. Gaffett's counsel clarified during argument on this motion that this refers to a case dealing with Medicare reimbursement for skilled nursing services provided to patients who are not expected to improve or have not improved over the course of treatment. Jimmo v. Sebelius, No. 5:11-cv-17, 2011 WL 5104355, at *2 (D. Vt. Oct. 25, 2011).

Because it features prominently in Mr. Gaffett's theory of his claim against HHS, a brief digression regarding Jimmo is necessary. In Jimmo, a group of nursing home and home health patients and organizations whose members include Medicare beneficiaries brought a putative class action challenging a "rule of thumb" used by Medicare intermediaries to deny claims of patients in failing health because "the beneficiary needs 'maintenance service only,' has 'plateaued,' or is 'chronic,' 'medically stable,' or not improving." Id. at *1-2. Referred to as the "Improvement Standard," the Jimmo plaintiffs challenged this policy because it is contrary to the Medicare Act and was not adopted through proper rulemaking. Id. at *2. HHS moved to dismiss

based, among other arguments, on the failure of the plaintiffs to exhaust their administrative remedies. Id. at *6.

The Jimmo court dismissed one plaintiff whose claim had never been presented to HHS because the home health agency had refused to accept her as a patient based on the Improvement Standard – the court noted that the Medicare regulations permitted the patient to force the home health agency to "demand bill" Medicare for services that the home health agency believed would not be covered. Id. at *4-5. For those patients who did receive services and whose bills were presented to HHS, but who were denied based on the Improvement Standard, the court held that exhaustion of administrative remedies would be futile in light of the improper use of the Improvement Standard, which is the crux of the claim, and unnecessary where the plaintiffs alleged procedural violations of their right to a coverage determination free of the taint of the Improvement Standard. Id. at *8-9. For these plaintiffs, the motion to dismiss was denied on October 25, 2011. Id. at *18, 22.

A year after the Jimmo motion to dismiss was denied, the Jimmo parties settled on a class-wide basis. ECF No. 7-4. After a fairness hearing held on January 24, 2013, the settlement was approved and final judgment entered. Jimmo Order Granting Final Approval of Settlement Agreement and Directing Entry of Final Judgment (ECF No. 92). Based on the settlement, which was incorporated into the final judgment, a class of Medicare beneficiaries was certified, including all patients who received skilled nursing services that were billed and denied any time between January 18, 2011, and the end of an education period estimated to be sometime in early 2014. ECF No. 7-4 ¶ XI. In consideration for release of all of their claims based on the use of

the Improvement Standard, class members were granted the right to seek "re-review" of any claims denied because of the Improvement Standard.[2] Id.

While far from clear in his opaque pleading, Mr. Gaffett appears to argue that the Nursing Home's claim against him for $6,190 might have been based on a denial grounded in the Improvement Standard and therefore may be covered by the holding and settlement in Jimmo. If so, his counterclaim alleges, the Nursing Home should have pursued its appeal and cannot recover from him if it did not. On August 1, 2013, Mr. Gaffett and the Nursing Home settled, agreeing to dismiss all claims against one another with prejudice in consideration for the payment of $3,500 and for assignment of all the Nursing Home's claims against Medicare to Mr. Gaffett, as well as its cooperation in his attempts to recover. Inconsistently with the pleading, the settlement agreement recites that Mr. Gaffett presented a Medicare claim for his wife's case "but it was not processed beyond the first level of review" and that "because [Mrs. Gaffett] would not improve, they were reducing the level of service."

The crossclaim against HHS that is the subject of this motion is entirely tentative in tone. It is grounded in layers of speculation, alleging that, if the Nursing Home sought to recover from Medicare but was denied, and if the Nursing Home was not paid in full because of the improper application of the Improvement Standard, or if an appeal of the denial might be pending, or if applicable administrative remedies have not yet been exhausted because they are futile under Jimmo, then Mr. Gaffett has a claim against HHS. Mr. Gaffett does not seem to know what the Nursing Home claim against him was for, whether it might have been for services that the Nursing Home did not present to Medicare because of the chilling effect of the Improvement Standard, whether any claim presented to Medicare for his wife's care was ever denied on any

[2] The settlement agreement withheld the right of re-review from class members whose claims were "currently" pending in a federal court as of the date of the settlement agreement on October 16, 2012. This exclusion is not applicable to Mr. Gaffett.

ground, including based on the Improvement Standard, or whether he is a member of the Jimmo class, entitled to seek re-review under the settlement, but barred by its release from suing in federal court.

**II. FEDERAL JURISDICTION**

HHS argues that the crossclaim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because Mr. Gaffett has failed to allege an injury in fact; because the state court lacked jurisdiction over the crossclaim so that, pursuant to the doctrine of derivative jurisdiction, this Court did not acquire jurisdiction on removal; and because Mr. Gaffett failed to exhaust administrative remedies. A challenge to subject matter jurisdiction through a Fed. R. Civ. P. 12(b)(1) motion to dismiss may come in two different forms – a facial attack or a factual attack. Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007). The former focuses on the sufficiency of the pleading, accepting the allegations in the complaint as true, while the latter permits the court to examine the pleadings, affidavits and other evidence and make limited findings of fact. Torres-Negron, 504 F.3d at 162-63 (1st Cir. 2007); Rivera Torres v. Junta de Retiro Para Maestros, 502 F. Supp. 2d 242, 247 n.3 (D.P.R. 2007). Unlike a dismissal based on Fed. R. Civ. P. 12(b)(6), which constitutes judgment on the merits, dismissal for lack of subject matter jurisdiction is not judgment on the merits and has no claim preclusive or *res judicata* effect. Muniz Cortes v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000).

A. Injury in Fact

Federal courts have jurisdiction to hear and determine only "cases or controversies." U.S. Const. art. III, § 2. They are "without power to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971). Standing is a threshold question in every case, requiring the court to determine "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant [ ]

invocation of federal-court jurisdiction." McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003) (citing Warth v. Seldin, 422 U.S. 490, 498-99 (1975) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962))). "[T]he irreducible constitutional minimum of standing contains three elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The first is that the plaintiff "must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly trace[able] to the challenged action of the defendant." Id. (citations omitted). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. (citations omitted).

Mr. Gaffett's pleading stumbles badly on the first and third prerequisites for standing because he does not identify any concrete, particularized and actual injury. Rather, his claim is grounded in conjecture and speculation about what might have caused the Nursing Home to seek recovery of $6,190 from him. When a claim is based solely on conjecture and requires the kind of hypothetical speculation that the Supreme Court has prohibited, it must be dismissed for lack of jurisdiction. Amidax Trading Grp. v. S.W.I.F.T. SCRL, 607 F. Supp. 2d 500, 508-09 (S.D.N.Y. 2009), aff'd, 671 F.3d 140 (2d Cir. 2011). Like the complaint dismissed in Amidax, Mr. Gaffett's crossclaim is "a patchwork of guesses and contradictions," id., alleging only that "if" a Medicare denial was the reason the bill was not paid in full, "then" HHS might have acted unlawfully. Mr. Gaffett does not allege that there was a Medicare denial but concedes that he does not know. Crossclaim ¶¶ 18-19. The crux of his crossclaim reasons that, if a hypothetical Medicare denial was conceivably based on the "the denial of palliative care," he could then seek

judicial review without exhausting administrative remedies pursuant to Jimmo. Id.; Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 326 (1st Cir. 2009) (nebulous intentions do not support a finding of actual or imminent injury); McInnis-Misenor, 319 F.3d at 72 (pleading built on a chain of contingencies must be dismissed for lack of standing).

Based on a facial review of the crossclaim in light of Lujan and accepting the facts as plead to be true, I find that Mr. Gaffett has failed to allege injury in fact and recommend that the crossclaim be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). 504 U.S. at 560.

B. State Court Lack of Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1346(b)(1), "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States for money damages . . . for injury or loss of property, or personal injury or death." See also 28 U.S.C. § 1346(a)(2). Because the crossclaim against HHS is a Medicare claim, the state court where this action was originally filed lacked subject matter jurisdiction. See 42 U.S.C. § 405(h) ("No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."); 42 U.S.C. § 1395ii (applying 42 U.S.C. § 405(h) to Medicare claims). HHS removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1) based on its status as a federal agency.

In 1922, the Supreme Court held that "[t]he jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a suit originally brought there have had jurisdiction." Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co., 258 U.S. 377, 382 (1922). Congress abrogated the doctrine in cases removed under 28 U.S.C. § 1441 by adding section 1441(f) in 1985, which stated that the court to which a civil action is removed

is "not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim." See Palmer v. City Nat'l Bank, 498 F.3d 236, 239 (4th Cir. 2007). In 2002, Congress amended the 1985 provision to specify that the removal had to be under Section 1441 ("this section") to avoid the derivative jurisdiction doctrine. See Barnaby v. Quintos, 410 F. Supp. 2d 142, 144 (S.D.N.Y. 2005) ("In amending the statute in 2002, and replacing less precise language with much more specific language, Congress left no doubt that Section 1441(f) applies only to removals under Section 1441 and not to removals under any other section."). The Fourth Circuit endorsed this view in a removal case similar to this one. See Palmer, 498 F.3d at 236; see also Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 233 (2007).

In Palmer, the federal government was brought into a state court suit on a crossclaim. 498 F.3d at 236. Like HHS here, the federal defendants removed under 28 U.S.C. § 1442 and filed a motion to dismiss for lack of subject matter jurisdiction based on the doctrine of derivative jurisdiction. Id. The Fourth Circuit held that because "the state court did not possess jurisdiction over City's third-party claim against the federal defendant . . . the district court did not gain proper jurisdiction of the claim upon its removal." Id. at 246; see also Glass v. Nat'l R.R. Passenger Corp., 570 F. Supp. 2d 1180, 1183 (C.D. Cal. 2008) (inconvenience and inconsistent results from litigating in two courts do not outweigh federal sovereign immunity and lack of subject matter jurisdiction; derivative jurisdiction applied and claim dismissed).

Accordingly, I find that this Court lacks jurisdiction over the crossclaim because the Rhode Island state court lacked jurisdiction to address a Medicare claim against HHS. See 28 U.S.C. §§ 1346(a)(2),1346(b)(1); Shalala v. Ill. Council for Long Term Care, Inc., 529 U.S, 1, 8-9 (2000) (federal courts have exclusive jurisdiction over fully-exhausted Medicare claims);

Demers v. Buonanno, C.A. No. 12-676ML, 2012 WL 5930223, at *4, 6 (D.R.I. Nov. 2, 2012), report and recommendation adopted, No. CA 12-676 ML, 2012 WL 5940568 (D.R.I. Nov. 27, 2012) (after removal pursuant to 28 U.S.C. § 1442, court only has derivative jurisdiction). Based on a facial review of the pleadings in light of the doctrine of derivative jurisdiction, I recommend that the crossclaim be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

C. Exhaustion of Administrative Remedies

HHS argues that Mr. Gaffett's failure to exhaust his administrative remedies by presenting his claim to the Secretary of HHS and appealing it through the administrative process also requires dismissal of his crossclaim. See Heckler v. Ringer, 466 U.S. 602, 614 (1984) (requiring administrative exhaustion for Medicare claims). The argument is based on section 405(h) of Title 42, made applicable to the Medicare program by 42 U.S.C. § 1395ii, which is the sole avenue for review of Medicare claims. 42 U.S.C. §§ 405(h), 1395ii. A court has jurisdiction under section 405(g) only after "presentment" of a claim to the Secretary and exhaustion of administrative remedies. Mathews v. Eldridge, 424 U.S. 319, 328 (1976). Unlike exhaustion, "presentment" can never be waived. Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 285 (5th Cir. 1999) (per curiam) (citing Mathews, 424 U.S. at 328). Here, however, the Declaration of Sandra Colby establishes "presentment" in that bills were presented to Medicare for services rendered to Mrs. Gaffett, and the amounts paid are somewhat lower than the amounts billed. Colby Decl. ¶ 4. While the Colby Declaration establishes that no request for redetermination was timely filed, the issue remains whether the requirement of a request for redetermination by Mr. Gaffett or the Nursing Home might be waived because the facts or the nature of the claim establishes that exhaustion would be futile. See id. ¶ 6; Jimmo, 2011 WL 5104355, at *8. Consideration of this argument would require this Court to perform a factual analysis pursuant to Fed. R. Civ. P. 12(b)(1).

With no jurisdiction over this crossclaim because of the speculative nature of the pleading and the lack of derivative jurisdiction, I decline to reach the question whether a hypothetical claim is exhausted or not, or whether exhaustion is required in this case. Nevertheless, I note that, if Mr. Gaffett turns out to be a Jimmo class member, his failure to exhaust will not necessarily defeat his right to the remedy of re-review established by the settlement agreement. Jimmo, 2011 WL 5104355, at *6-9 (exhaustion requirement waived for Jimmo plaintiffs who presented claims to HHS). However, the Jimmo release would bar him from pursuing that remedy in this Court.

## III. FAILURE TO STATE A CLAIM

In the alternative, HHS brought its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim based on Mr. Gaffett's speculative factual allegations in the crossclaim. Because the Court has already concluded that it lacks subject matter jurisdiction, it is not appropriate to reach HHS's Rule 12(b)(6) argument, which would decide the case on the merits. Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 100 (1st Cir. 2001) (per curiam) ("When a federal court concludes that it lacks subject matter jurisdiction over a case, it is precluded from rendering any judgments on the merits of the case."). While the crossclaim appears to lack "sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007)), I make no such finding. Accordingly, I recommend that the HHS motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be denied as moot.

## IV. CONCLUSION

Because this Court lacks subject matter jurisdiction over Mr. Gaffett's crossclaim, I recommend that HHS's motion (ECF No. 5) be GRANTED IN PART and that the crossclaim be

dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1). Finding no jurisdiction over the subject matter, I further recommend that HHS's motion be DENIED IN PART AS MOOT to the extent it is based on Fed. R. Civ. P. 12(b)(6).

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days after the date of service. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 20, 2013